**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**COLIN NGUYEN;**

***Plaintiff,***

**v.**

**SCHOOLCRAFT COMMUNITY COLLEGE, by and through its Board of Trustees; LAURIE KATTUAH-SNYDER; CLARK HILL, PLC; MICHELE KATZ; and HR ADVANTAGE ADVISORY, LLC;**

***Defendants.***

**CASE NO.:2:25-cv-12245**

**Hon. Nancy G. Edmunds**
**Mag. Judge Anthony P. Patti**

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS [ECF 027]**

---

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

STANDARD OF REVIEW .......... 2

ARGUMENT .......... 3

I. PLAINTIFF HAS ADEQUATELY STATED A TITLE IX CLAIM AGAINST SCHOOLCRAFT COLLEGE .......... 3

II. PLAINTIFF HAS ADEQUATELY STATED A DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983 .......... 6

III. Plaintiff Has Alleged Facts Supporting Both Procedural and Substantive Due Process Violations .......... 7

A. Procedural Due Process: Right to an Impartial Decision-Maker .......... 7

B. Substantive Due Process: Unauthorized Investigation .......... 8

C. Protected Liberty and Property Interests .......... 9

D. Undisclosed Conflicts of Interest Undermined Impartiality .......... 10

E. Plaintiff's Claim Is Based on the College's Own Actions, Not Respondeat Superior .......... 10

IV. DEFENDANT KATTUAH-SNYDER IS NOT ENTITLED TO QUALIFIED IMMUNITY ....................................................................12

A. Defendants' Framing of the Right at Issue Is Too Narrow ........................12

B. The Sixth Circuit Has Clearly Established Due Process Requirements in College Disciplinary Proceedings ............................................................13

C. A Reasonable Official Would Understand That Kattuah-Snyder's Alleged Conduct Violates Clearly Established Rights................................................14

D. The Right to an Impartial Decision-Maker Is Well-Established Across Multiple Sources.........................................................................................15

E. Plaintiff's Claims are Properly Pled Against Defendant Kattuah-Snyder.16

V. PLAINTIFF HAS ADEQUATELY STATED A MONELL CLAIM AGAINST SCHOOLCRAFT COLLEGE.........................................................16

VI. DEFENDANTS ARE NOT ENTITLED TO GOVERNMENTAL IMMUNITY ON PLAINTIFF'S STATE LAW CLAIMS..................................18

CONCLUSION ...........................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) .......... 3

*Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020) .......... 2

*City of Canton v. Harris*, 489 U.S. 378 (1989) .......... 18

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) .......... 12

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) .......... 5, 10, 17

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018) .......... 8, 11, 16

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) .......... 7, 10, 14

*Doe v. Univ. of Ky.,* 971 F.3d 553 (6th Cir. 2020) .......... 3, 4, 9

*Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008) .......... 2

*Novak v. City of Parma, 932 F.3d 421, 426-27* (6th Cir. 2019) .......... 3

*Odom v. Wayne Cnty*., 482 Mich. 459 (2008) .......... 19

*Odom v.Wayne Cnty.*, 482 Mich. 459, 479, 760 N.W.2d 217 (2008) .......... 19

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .......... 8, 12, 17

*Pryor v. Ohio State Univ.*, 139 F.4th 536 (6th Cir. 2025) .......... 4

*Robinson v. City of Detroit*, 462 Mich. 439, 458-459, 613 N.W.2d 307 (2000) .......... 19

*Schulkers v. Kammer*, 955 F.3d 520 (6th Cir. 2020) .......... 15

*Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022) .......... 5, 6

*White v. United States*, 601 F.3d 545 (6th Cir. 2010) .......... 2

*Williams v. Maurer*, 9 F.4th 416 (6th Cir. 2021) .......... 13, 14

*Withrow v. Larkin*, 421 U.S. 35 (1975) .......... passim

**Statutes**

20 U.S.C. §1681 .......... 3

20 U.S.C. §1687 .......... 3, 9, 14

34 C.F.R. § 106.44 .......... 18

42 U.S.C. §1983 .......... 7

Federal Rule of Civil Procedure 12(b)(6) .......... 2

Mich. Comp. Laws § 691.1407(2) .......... 18

United States Constitution Amend. 14 .......... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 2

**NOW COMES** Plaintiff Colin Nguyen, by and through his attorney, with Plaintiff's Response to Defendant's Motion to Dismiss [ECF 027] and hereby states the following:

## INTRODUCTION

This case is about the most fundamental promises of our legal system: jurisdiction, fairness, and due process. Plaintiff Colin Nguyen was dragged through a Title IX investigation that never should have existed. The complainant was neither a student nor an employee of Schoolcraft College and admitted under oath that the alleged incident had no impact on his education or employment. Yet Defendants pressed forward, layering conflicts of interest and procedural irregularities into a process that lacked both jurisdiction and impartiality.

Defendants now ask this Court to dismiss the case by minimizing these violations as "too much process." That argument turns the Constitution on its head. Due process is not a matter of quantity—it is a matter of legitimacy. A proceeding without jurisdiction, conducted by conflicted decision-makers, is not "extra process." It is a deprivation of rights. Plaintiff has pleaded detailed facts showing jurisdictional overreach, undisclosed conflicts of interest, and constitutional violations. At this stage, those allegations must be taken as true. Defendants' motion improperly asks the Court to resolve factual disputes and excuse misconduct before discovery has even begun. The law does not permit such shortcuts.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, "we 'must accept as true all material [factual] allegations of the complaint'" and "must construe the complaint liberally in favor of the complaining party." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008)).

At the current stage, it simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020). If resolving the dispute involves a question of fact upon which evidence is required, dismissal on the pleadings is not appropriate. See *Novak v. City of Parma, 932 F.3d 421, 426-27* (6th Cir. 2019).

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. PLAINTIFF HAS ADEQUATELY STATED A TITLE IX CLAIM AGAINST SCHOOLCRAFT COLLEGE

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681. This statute "provides relief broadly to those who face discrimination on the basis of sex in the American education system." *Doe v. Univ. of Ky.,* 971 F.3d 553 (6th Cir. 2020). Congress has defined the term "program or activity" expansively to include "all of the operations of" a college or university that receives federal funds. 20 U.S.C. §1687. This broad definition reflects Congress's intent "to extend the scope of Title IX's equal opportunity obligations to the furthest reaches of an institution's programs." *Doe v. Univ. of Ky.,* 971 F.3d 553 (6th Cir. 2020).

The Title IX complainant was not a student or employee of Schoolcraft College. Title IX does not authorize colleges to adjudicate private disputes wholly outside their programs. By proceeding anyway, Schoolcraft acted ultra vires. Defendants' suggestion that Plaintiff received "too much process" is legally incoherent. A proceeding without jurisdiction is not process at all—it is a constitutional violation.

Plaintiff's Title IX claim is not limited to allegations of gender bias but encompasses the college's improper application of Title IX procedures in a manner that violated his rights. While Defendants characterize this case as failing to state a claim because it does not allege discrimination based on sex, this narrow interpretation ignores the broader protections afforded by Title IX.

The Sixth Circuit has recognized various theories of liability under Title IX beyond simple gender discrimination. Title IX "provides relief broadly to those who face discrimination on the basis of sex in the American education system." *Doe v. Univ. of Ky.,* 971 F.3d 553 (6th Cir. 2020). The Supreme Court has also recognized an implied right of relief for students under Title IX. *Pryor v. Ohio State Univ.*, 139 F.4th 536 (6th Cir. 2025).

Under the "erroneous outcome" theory recognized by the Sixth Circuit, a plaintiff must plead facts sufficient to "(1) 'cast some articulable doubt' on the accuracy of the disciplinary proceeding's outcome, and (2) demonstrate a 'particularized’ causal connection between the flawed outcome and gender bias. '" *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). Plaintiff has alleged both procedural irregularities and conflicts of interest. It was undisclosed to Plaintiff that Clark Hill would be serving simultaneously as hearing officer and complainant’s advisor, while its undisclosed subsidiary HR Advantage provided the investigator. These structural conflicts undermine impartiality and cast articulable doubt on the outcome.

The Sixth Circuit has held that "when credibility is at issue, the Due Process Clause mandates that a university provide accused students a hearing with the opportunity to conduct cross-examination." *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). Furthermore, the court has recognized that "a biased decisionmaker [is] constitutionally unacceptable" and that "our system of law has always endeavored to prevent even the probability of unfairness." *Withrow v. Larkin*, 421 U.S. 35 (1975).

The Sixth Circuit has explicitly held that "the right to bring suit under Title IX is limited to 'those circumstances where a plaintiff is so closely tied to a university that the individual is essentially a student of that university. '" *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). This principle applies equally to complainants in Title IX proceedings. When J.S. testified that he was neither a student nor an employee of Schoolcraft College, and that the alleged incident did not impact his education or employment, the college should have determined it lacked jurisdiction to proceed with the Title IX investigation.

Plaintiff has adequately stated a Title IX claim against Schoolcraft Community College based on the college's improper application of Title IX procedures when it lacked jurisdiction to conduct an investigation. The discrepancy between the initial report describing J.S. as an employee and his later testimony that he was not affiliated with the college supports Plaintiff's claim that the college acted

beyond its authority. The procedural irregularities and conflicts of interest cast articulable doubt on the outcome of the disciplinary proceeding.

Title IX "provides relief broadly to those who face discrimination on the basis of sex in the American education system," and this broad remedial purpose supports allowing Plaintiff's claim to proceed beyond the motion to dismiss stage. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). The Court should deny Defendants' motion to dismiss and allow Plaintiff's Title IX claim to proceed to discovery.

## II. PLAINTIFF HAS ADEQUATELY STATED A DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983

Defendants contend negligence cannot support a due process claim. Plaintiff alleges far more: Defendants acted under color of state law to subject him to an unauthorized investigation and hearing, depriving him of both procedural and substantive due process.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." United States Constitution Amend. 14. To enforce this constitutional guarantee, 42 U.S.C. §1983 creates a cause of action against any person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," subjects another to "the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983.

Plaintiff's due process claim is not merely about a mistake in applying procedures, but about Defendants knowingly exceeding their authority in a manner that violated his constitutional rights. When a university student faces serious disciplinary sanctions, the student is entitled to minimum due process protections, including "notice of the charges, an explanation of the evidence against the student, and an opportunity to present his side of the story before an unbiased decision maker." *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). The Sixth Circuit has emphasized that "a fair trial in a fair tribunal is a basic requirement of due process," which "applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U.S. 35 (1975).

## III. Plaintiff Has Alleged Facts Supporting Both Procedural and Substantive Due Process Violations

### A. Procedural Due Process: Right to an Impartial Decision-Maker

The decision-makers in his case were not impartial. The Sixth Circuit has recognized that while an individual's dual roles do not per se disqualify them from being an impartial arbiter, a plaintiff may allege "sufficient facts plausibly indicating that [a decision-maker's] ability to be impartial 'had been manifestly compromised.

'" *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018). Here, Clark Hill provided both the hearing officer and the complainant's advisor, while HR Advantage, owned by Clark Hill, provided the investigator—creating an inherent conflict of interest that was not disclosed.

The Sixth Circuit has recognized that special difficulties can arise when it is contended that a municipal policymaker has delegated his policymaking authority to another official. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). This principle applies to the college's Title IX procedures, where decision-making authority may have been improperly delegated or influenced by conflicts of interest.

The Supreme Court has recognized that in administrative proceedings, "a fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin*, 421 U.S. 35 (1975). This principle applies to Title IX proceedings, which are plainly education-related for Title IX purposes.

**B. Substantive Due Process: Unauthorized Investigation**

Plaintiff adequately lays the foundation for a substantive due process claim based on Defendants' conduct in subjecting him to an unauthorized Title IX investigation. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal

financial assistance." *Doe v. Univ. of Ky.,* 971 F.3d 553 (6th Cir. 2020). For purposes of Title IX, the term "program or activity" includes "all of the operations of a college, university, or other postsecondary institution, or a public system of higher education." 20 U.S.C. §1687.

Critically, J.S. testified that he was not a student or employee of the college and that the incident did not impact his education or employment. This raises serious questions about whether the college had any jurisdiction to conduct a Title IX investigation, as the complainant was not part of the college's "program or activity."

### C. Protected Liberty and Property Interests

The Sixth Circuit has recognized that students have protected interests at stake in disciplinary proceedings. Suspension "clearly implicates a protected property interest, and allegations of sexual assault may impugn a student's reputation and integrity, thus implicating a protected liberty interest." *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). When these interests are at stake, a student is entitled to "the opportunity to be 'heard at a meaningful time and in a meaningful manner. '" *Id.*

In this case, Plaintiff's liberty interest in his reputation and educational status was jeopardized by the Title IX investigation. The Sixth Circuit has specifically held that "when credibility is at issue, the Due Process Clause mandates that a university

provide accused students a hearing with the opportunity to conduct cross-examination." *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). Moreover, the court has emphasized that "if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder." *Id.*

**D. Undisclosed Conflicts of Interest Undermined Impartiality**

It cannot be understated - the undisclosed relationships between Clark Hill and HR Advantage created a structural conflict of interest that undermined the impartiality of the entire process. The Supreme Court has identified situations "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35 (1975). While there is generally a "presumption of honesty and integrity in those serving as adjudicators," this presumption can be overcome when a plaintiff alleges facts indicating that a decision-maker's ability to be impartial has been compromised. *Withrow v. Larkin*, 421 U.S. 35 (1975), *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018).

**E. Plaintiff's Claim Is Based on the College's Own Actions, Not Respondeat Superior**

Defendants' argument that Schoolcraft College cannot be held vicariously liable under §1983 mischaracterizes Plaintiff's claim. Under §1983, there is no respondeat superior or vicarious liability. However, Plaintiff's claim is not based on respondeat superior, but on the college's own actions. The Supreme Court has recognized that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). A single decision by a properly constituted body "unquestionably constitutes an act of official government policy." *Id.*

In this case, Schoolcraft College itself made the decision to conduct a Title IX investigation without jurisdiction and with undisclosed conflicts of interest. This is not a case where Plaintiff is seeking to hold the college liable for the unauthorized acts of its employees, but rather for the college's own policy decisions. As the Supreme Court has noted, "a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations." *Id.* Such decisions can still constitute official policy for purposes of §1983 liability.

Defendants' reliance on *Lewis* is misplaced. *Lewis* rejected liability for mere negligence. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Plaintiff alleges intentional concealment of conflicts and deliberate disregard of jurisdictional limits—conduct far beyond negligence.

Plaintiff has adequately stated a due process claim under 42 U.S.C. § 1983 by alleging that Defendants conducted a Title IX investigation without jurisdiction and with undisclosed conflicts of interest. These allegations go beyond mere negligence and demonstrate that Defendants knowingly exceeded their authority in a manner that violated Plaintiff's constitutional rights. For these reasons, Plaintiff's due process claim should survive the motion to dismiss.

## IV. DEFENDANT KATTUAH-SNYDER IS NOT ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity shields government officials from civil liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. To determine whether qualified immunity applies, courts engage in a two-step inquiry: (1) whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated, and (2) whether that right was clearly established. *Williams v. Maurer*, 9 F.4th 416 (6th Cir. 2021). The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.*

### A. Defendants' Framing of the Right at Issue Is Too Narrow

Defendants incorrectly frame the right at issue as merely whether there is clearly established law prohibiting a college from investigating a Title IX complaint when the complainant is not affiliated with the college. This characterization is too narrow and misses the broader constitutional principles at stake. The proper framing concerns the right not to be subjected to disciplinary proceedings without proper authority and before an impartial decision-maker.

### B. The Sixth Circuit Has Clearly Established Due Process Requirements in College Disciplinary Proceedings

The Sixth Circuit has clearly established that due process requires an impartial decision-maker in administrative proceedings. A "fair trial in a fair tribunal is a basic requirement of due process," and this applies to "administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U.S. 35 (1975). The court has recognized that "not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Id.*

In the specific context of university disciplinary proceedings, the Sixth Circuit has emphasized the importance of procedural safeguards. In *Doe v. University of Cincinnati*, the court confirmed that when credibility is at issue, the Due Process Clause mandates that a university provide accused students a hearing with the

opportunity to conduct cross-examination. *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). This demonstrates the court's recognition of the significant due process protections required in university disciplinary proceedings.

**C. A Reasonable Official Would Understand That Kattuah-Snyder's Alleged Conduct Violates Clearly Established Rights**

What matters in determining if a right is clearly established is "whether the contours of the allegedly violated right were sufficiently clear such that a reasonable official would understand that what he is doing violates that right." *Schulkers v. Kammer*, 955 F.3d 520 (6th Cir. 2020). Notice to officials is paramount, and "the salient question in evaluating the clearly established prong is whether officials had fair warning that their conduct was unconstitutional." *Schulkers v. Kammer*, 955 F.3d 520 (6th Cir. 2020).

A reasonable official in Defendant Kattuah-Snyder's position would understand that initiating a disciplinary process without any jurisdictional basis violates due process principles. Title IX's scope is defined by statute to cover "all of the operations of a college, university, or other postsecondary institution, or a public system of higher education." 20 U.S.C. §1687. When an official acts without authority, such actions are considered ultra vires.

Furthermore, a reasonable official would know that allowing undisclosed conflicts of interest in disciplinary proceedings violates the requirement of an impartial decision-maker. The Sixth Circuit has recognized that although an individual's dual roles do not per se disqualify them from being an impartial arbiter, when an individual's "ability to be impartial 'had been manifestly compromised,'" due process concerns arise. *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018). This principle applies directly to Defendant Kattuah-Snyder's alleged failure to address undisclosed conflicts of interest in the Title IX process.

### D. The Right to an Impartial Decision-Maker Is Well-Established Across Multiple Sources

When determining whether a right is clearly established, courts look first to decisions of the United States Supreme Court, then to the Sixth Circuit's own decisions and those of other courts within the circuit, and then to decisions of other Courts of Appeal. Across these sources, the right to an impartial decision-maker in disciplinary proceedings is well-established.

The Supreme Court has long recognized that "various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35 (1975). The Sixth Circuit has applied this principle in the

context of university disciplinary proceedings, noting that when a university "has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder." *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018).

**E. Plaintiff's Claims are Properly Pled Against Defendant Kattuah-Snyder**

Defendant Kattuah-Snyder's failure to determine whether J.S. was affiliated with the college before proceeding with the investigation and failure to address undisclosed conflicts of interest raise serious questions about whether she violated clearly established due process rights. These factual issues must be developed through discovery before a determination on qualified immunity can be properly made.

## V. PLAINTIFF HAS ADEQUATELY STATED A MONELL CLAIM AGAINST SCHOOLCRAFT COLLEGE

Defendants argue that Plaintiff has failed to allege a Monell claim against Schoolcraft College. However, Plaintiff has alleged that Kattuah-Snyder, as the Title IX Coordinator, had final decision-making authority regarding Title IX investigations. Under *Pembaur*, a single decision by a policymaker may, under

certain circumstances, constitute a policy for purposes of Monell liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

Defendant Kattuah-Snyder, as Title IX Coordinator, made a deliberate choice to proceed with the investigation despite knowing or having reason to know that J.S. was not affiliated with the college. This decision represents an official policy of the college for purposes of § 1983 liability.

In addition, the a deliberate indifference claim is clearly laid out which requires (1) a clear and persistent pattern of illegal activity, (2) the municipality knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the custom caused the deprivation of plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378 (1989). There was no jurisdiction for the Title IX investigation, even with information that the Title IX investigation did not have jurisdictional ground the investigation parade continued with full knowledge of the constitution deprivations that were occurring. This proceeded all the way through the hearing that was devoid of due process with knowledge that the hearing was compromised by obvious conflicts of interest.

Moreover, Schoolcraft College had a practice of conducting Title IX investigations without proper jurisdiction and with undisclosed conflicts of interest.

## VI. DEFENDANTS ARE NOT ENTITLED TO GOVERNMENTAL IMMUNITY ON PLAINTIFF'S STATE LAW CLAIMS

Under Michigan law, governmental agencies are generally immune from tort liability when engaged in the exercise of a governmental function. However, this immunity does not extend to actions that are ultra vires (beyond the scope of authority) or undertaken with gross negligence. *Odom v. Wayne Cnty*., 482 Mich. 459 (2008).

Defendants provide that Schoolcraft was engaged in discharging its duties under Title IX and the enabling regulations. 34 C.F.R. § 106.44.

Defendants exceeded their authority by conducting a Title IX investigation when the complainant was not affiliated with the college.

Governmental employees acting within the scope of their authority and in the course of their employment are immune from tort liability unless (1) their conduct rises to the level of "gross negligence" that is the one, most immediate and direct cause of injury to the plaintiff, Mich. Comp. Laws § 691.1407(2), *Robinson v. City of Detroit*, 462 Mich. 439, 458-459, 613 N.W.2d 307 (2000), or (2) their conduct constitutes an "intentional tort" done without good faith or with malice. *Odom v.Wayne Cnty.*, 482 Mich. 459, 479, 760 N.W.2d 217 (2008). Under Michigan law, such ultra vires actions fall outside the scope of governmental immunity.

Moreover, Defendants failed to disclose conflicts of interest in the Title IX process, which could constitute gross negligence if proven. The failure to determine J.S.'s status before proceeding with the investigation, despite the serious consequences for Plaintiff, could demonstrate "a substantial lack of concern for whether an injury results." At this stage of the proceedings, Defendants are not entitled to governmental immunity.

## CONCLUSION

**WHEREFORE** the Plaintiff requests that the Court deny the Defendants Motion to Dismiss. Plaintiff has alleged detailed facts establishing plausible claims under Title IX, §1983, and state law. To the extent the Court determines that additional factual support is necessary in Plaintiff's allegations, Plaintiff respectfully requests leave to amend his pleading. In that event, Plaintiff will also move to proceed under a pseudonym and to seal the prior record, given the sensitive nature of the sexual assault allegations and the need to protect privacy and dignity interests.

Date: December 1, 2025

Respectfully Submitted,

Keith Altman, Esq.
Law Office of Keith Altman
30474 Fox Club Drive
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929

keithaltman@kaltmanlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**COLIN NGUYEN;**

***Plaintiff,***

**v.**

**SCHOOLCRAFT COMMUNITY COLLEGE, by and through its Board of Trustees; LAURIE KATTUAH-SNYDER; CLARK HILL, PLC; MICHELE KATZ; and HR ADVANTAGE ADVISORY, LLC;**

***Defendants.***

**CASE NO.:2:25-cv-12245**

**Hon. Nancy G. Edmunds**
**Mag. Judge Anthony P. Patti**

---

**CERTIFICATE OF SERVICE**

---

I certify that on December 1, 2025, I served the foregoing Plaintiff's Response to Defendants Motion to Dismiss upon all parties herein by filing copies of same using the ECF System.

Respectfully Submitted,

Keith Altman, Esq.
Law Office of Keith Altman
30474 Fox Club Drive
Farmington Hills, Michigan 48334

Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorneys for Plaintiff*